UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALAN B. DAIGRE,

    Plaintiff,

v.

EDMONDS COMMUNITY COLLEGE, *et al.*,

    Defendants.

CASE NO. C07-1962RSM

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Dkt. #19). Defendants seek to dismiss all of Plaintiff's claims, which include disparate treatment and retaliation claims under Title VII, civil rights claims under 42 U.S.C. § 1983, and wrongful discharge and intentional infliction of emotional distress claims under common law. Defendants argue that Plaintiff was terminated from his employment for legitimate, non-discriminatory reasons. Defendants also argue that several of Plaintiff's claims are procedurally improper or otherwise inappropriate. Significantly, Plaintiff only addresses his retaliation claim in his response, and argues that whether he was terminated for legitimate reasons and whether Defendants retaliated against him are questions for the jury.

For the reasons set forth below, the Court GRANTS IN PART Defendants' Motion for Summary Judgment.

MEMORANDUM ORDER
PAGE - 1

## II. DISCUSSION

### A. Background

The instant lawsuit arises from a series of events that occurred over several years while Plaintiff Alan B. Daigre ("Mr. Daigre) was employed at Defendant Edmonds Community College ("EdCC"). Mr. Daigre, who is African-American, was originally hired as a janitor at EdCC on July 28, 1983. He continued to work at EdCC in a variety of capacities over the next 24 years, including as a security guard, as a Security Supervisor, and as a Campus Security Sergeant. However, beginning in the late 90's, Mr. Daigre's relationship with EdCC began to deteriorate as demonstrated by the numerous Washington State Human Rights Commission ("WSHRC") and Equal Employment Opportunity Commission ("EEOC") complaints he filed against EdCC. In his complaints, Mr. Daigre alleged that EdCC was engaging in a pattern and practice of racial discrimination against him. The tension culminated in 2007, and on June 7, 2007, EdCC conducted a hearing to determine if Mr. Daigre had violated state and college ethics laws. Two weeks later, Defendant Jack Oharah ("Mr. Oharah"), President of EdCC, placed Mr. Daigre on administrative leave. On July 31, 2007, Mr. Daigre was terminated by Mr. Oharah, effective August 15, 2007.

According to a letter sent by Mr. Oharah to Mr. Daigre, EdCC was terminating Mr. Daigre based on his inappropriate use of EdCC-owned computers for his own personal use and profit. Mr. Oharah indicated that EdCC conducted two separate investigations of Mr. Daigre's hard drive, which demonstrated that Mr. Daigre was using the computers to support his personal vitamin business, as well as to support personal business activity on both E-bay and Craig's List. In addition, Mr. Oharah claims that the investigations indicated that Mr. Daigre used the internet to improperly access dating and singles sites and adult content sites. The letter also accused Mr. Daigre of installing software to conceal the improper use of the internet.

In arriving at his decision to terminate Mr. Daigre, Mr. Oharah also informed Mr. Daigre that he was considering his overall employment history and conduct at EdCC, which included: (1) a suspension in 1997 for allowing two cans of pepper spray owned by EdCC to come into the possession of women who were not employees of EdCC; (2) showing active resistance to

complying with anger management training following the pepper spray incident; (3) failure to abide by state ethical guidelines despite receiving training in those areas; and (4) showing continual issues of supervisory competence despite receiving training by EdCC in supervision fundamentals. Overall, Mr. Oharah stated:

> [Y]ou have continued the pattern of denying accountability and minimizing the seriousness of the charges against you. I have no reason to believe that you are capable of taking personal responsibility for your actions and making the necessary and sustainable corrections that should be reasonably expected of a College employee.
>
> Under the totality of the circumstances, your termination is the appropriate level of discipline.

(Dkt. #20, Decl. of Oharah, Ex. F at 11).

Importantly, Mr. Oharah sent Mr. Daigre this termination letter one month after Mr. Daigre had withdrawn a complaint with the WSHRC and requested the right to sue. Mr. Daigre had initially filed the complaint, which was mutually filed with the EEOC, in March of 2007. Mr. Daigre lodged the complaint in response to what he perceived to be a demotion in February of 2007. He claims that he was notified that he was being laid off as a Security Supervisor, but that he could accept a position as Security Sergeant if he wished to remain employed, a position he claims he reluctantly accepted. Mr. Daigre contends that this adverse employment action was consistent with the overall pattern of racial discrimination by EdCC against him.

Once Mr. Oharah notified Mr. Daigre that he was being terminated, Mr. Daigre filed his last EEOC claim and requested the right to sue. The Department of Justice ("DOJ") granted Mr. Daigre's request, and notified him of his right to sue EdCC under Title VII of the Civil Rights Act on September 14, 2007. The DOJ informed Mr. Daigre that he had 90 days from the receipt of the letter to sue, and Mr. Daigre initiated the instant lawsuit within that window by filing his complaint on December 7, 2007. Mr. Daigre named EdCC as a defendant, along with Mr. Oharah, Kathy Beem ("Ms. Beem"), Vice President for Human Resources at EdCC, Steve Robinson ("Mr. Robinson"), Director of Campus Safety and Security at EdCC, and Rachel Solemsaas ("Ms. Solemsaas"), Vice President of Finance and Operations at EdCC.

The complaint did not sufficiently identify to Defendants' counsel Mr. Daigre's exact claims, and as a result, Defendants requested that Mr. Daigre clarify his claims through

MEMORANDUM ORDER
PAGE - 3

discovery. Mr. Daigre responded that his exact claims included: Title VII claims for retaliation and disparate treatment; common law claims for intentional infliction of emotional distress and wrongful discharge; and civil rights violations under 42 U.S.C. § 1983. (Dkt. #24, Decl. of Battuello, Ex. 13 at 2). With respect to his civil rights claim, Mr. Daigre specifically alleges that his free speech rights under the First Amendment, his due process rights under the Fifth and Fourteenth Amendment, and his equal protection rights under the Fourteenth Amendment were all violated. (*Id.* at 4). After the conclusion of discovery, Defendants brought the instant motion for summary judgment, seeking dismissal of all of Mr. Daigre's claims. It is also noteworthy that Mr. Daigre filed his opposition to Defendants' motion one day late. In addition, the opposition only addresses Mr. Daigre's retaliation claim under Title VII.

### B. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).

MEMORANDUM ORDER
PAGE - 4

### C. Plaintiff's Opposition

At the outset, the Court addresses Mr. Daigre's opposition to Defendants' motion for summary judgment. Defendants argue that the opposition should be stricken in its entirety because it was filed one day late. The Court agrees that Mr. Daigre's counsel was tardy in her filing. Local Rule CR 7(d)(3) expressly provides that "[a]ny opposition papers shall be filed and served not later than the Monday before the noting date." Here, Defendants correctly noted the instant motion for Friday, September 12, 2008, thereby making the opposition due by Monday, September 8, 2008. However, it is unequivocally clear that Mr. Daigre's counsel filed the responsive brief on Tuesday, September 9, 2008. Despite this significant error, the Court shall not strike Mr. Daigre's response. The Court prefers to rule on the merits whenever possible, and a one-day delay in the filing of an opposition brief is not sufficient grounds alone to strike the opposition in its entirety.[1]

The Court will not, however, rule on the merits when a party fails to respond to certain portions of the opposing party's motion. As expressly laid out by Local Rule 7(b)(2), "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Furthermore, this district court has consistently dismissed claims where a party fails to address specific arguments raised by their opponent in a dispositive motion based on this rule. *See Crane v. City of Roy*, 2008 WL 4371662 at *7 (W.D. Wash. Sep. 22, 2008); *McGraw v. United States*, 2008 WL 4000570 at *4 (W.D. Wash. August 25, 2008); *Green v. Seattle Art Museum*, 2008 WL 2180144 at *5 (W.D. Wash. May 22, 2008); *Johnson v. Microsoft*, 2008 WL 803124 at *2 (W.D. Wash. March 21, 2008). Here, Defendants' motion for summary judgment clearly seeks dismissal of *all* of Mr. Daigre's claims.

---

[1] The Court also notes that Mr. Daigre's counsel failed to follow the relevant rules regarding the submission of voluminous documents. As expressly set forth by ECF Procedures Rule III(F), documents that exceed 100 pages shall also be delivered to the Clerk's office for chambers. Mr. Daigre's opposition, together with all the declarations and exhibits attached thereto, are nearly 600 pages in length. Yet Mr. Daigre's counsel failed to provide a hard copy as required by the rules of the Court.

MEMORANDUM ORDER
PAGE - 5

But the opposition filed by Mr. Daigre's counsel, as noted above, only addresses Mr. Daigre's retaliation claim under Title VII. In fact, Mr. Daigre's argument in response to Defendants' motion is confined to less than three pages after a 12-page restatement of the facts. (Dkt. #30 at 12-14). Therefore the Court construes Mr. Daigre's silence as an indication to the Court that he has abandoned the claims he fails to address in his opposition to Defendants' motion.

Mr. Daigre's counsel also makes the affirmative statement in her brief that Mr. Daigre has a valid claim under Title VII based upon a hostile work environment. However, and as Defendants point out, Mr. Daigre never raised a hostile work environment claim in his complaint and a new claim cannot be raised for the first time in response to a summary judgment motion. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). The proper method in which to raise a new claim after a complaint is filed is set forth by Fed. R. Civ. P. 15. In any event, Mr. Daigre's counsel fails to even mention the relevant rules of law with respect to a hostile work environment claim. Accordingly, the Court finds no reason to address whether Mr. Daigre has a proper hostile work environment claim under Title VII. The Court shall ultimately grant summary judgment in favor of Defendants with respect to all of Mr. Daigre's claims with the exception of his retaliation claim under Title VII.

**D.     Retaliation**

Title VII prohibits an employer from discriminating against any of its employees "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Moreover, to make a prima face case of retaliation under Title VII against an employer, a plaintiff must demonstrate that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a casual link between his activity and the employment decision. *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). Protected activity includes the filing of a charge or a complaint, as well as engaging in other activity intended to oppose an employer's discriminatory practices. *Id.* (citing 42 U.S.C. § 2000e-3(a)). A court may infer that an employer's actions were caused by an employee's engagement in

MEMORANDUM ORDER
PAGE - 6

protected activities based on the proximity in time between the two events. *See Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000). The plaintiff must also show that "the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citations omitted).

Once a plaintiff makes a prima facie case of retaliation, courts employ the burden shifting approach set forth by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, if a plaintiff is successful in making a prima facie case of retaliation, "the burden shifts to [the employer] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Manatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003) (citation omitted). If the employer meets this burden, the burden shifts back to the plaintiff, who must then show "that [employer's] stated reason [for the adverse action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. The burden of persuading the trier of fact ultimately rests with the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Notably, the burden on both parties is not one of persuasion, but one of production. *See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1147 (9th Cir. 2006).

### 1. Prima Facie Case of Retaliation

In the instant case, the Court finds that Mr. Daigre has presented sufficient evidence to establish a prima facie case of retaliation against EdCC. It is clear that he engaged in a protected activity throughout his time at EdCC by lodging not one, but five complaints with the EEOC. In each instance, Mr. Daigre filed a complaint because he believed EdCC was engaging in a pattern or practice of racial discrimination against him. And as mentioned above, the statutory framework of Title VII indicates that filing a complaint with the EEOC is a protected activity. *See* 42 U.S.C. § 2000e-3(a); *Raad*, 323 F.3d at 1197. Defendants indeed concede that at the very least, Mr. Daigre's 2007 EEOC and WSHRC complaint was a protected activity.

There is also ample evidence in the record that Mr. Daigre engaged in other types of protected activities. For example, in April of 2007, EdCC terminated Hussam Almatrood ("Mr. Almatrood"), a subordinate employee of Mr. Daigre in the security department for apparently viewing inappropriate content on his EdCC-owned computer. In response to Mr. Almatrood's

MEMORANDUM ORDER
PAGE - 7

firing, Mr. Daigre sent an email to Mr. Robinson, Director of Campus Safety and Security at EdCC, to express his concern about the way in which Mr. Almatrood was terminated. (Dkt. #25, Decl. of Daigre, Ex. G). Specifically, he contends that he was not consulted with respect to Mr. Almatrood's conduct. He also indicates that Mr. Almatrood had never received any ethics training, nor was he warned about his inappropriate conduct. Moreover, making an informal complaint to a supervisor is also a protected activity. *See Equal Employment Opportunity Commission v. Hacienda Hotel*, 881 F.3d 1504, 1514 (9th Cir. 1989); *see also Ray*, 217 F.3d at 1240, n.3 ("[A]n employee's complaints about the treatment of others is considered a protected activity, even if the employee is not a member of the class that he claims suffered from discrimination, and even if the discrimination he complained about was not legally cognizable.").

In addition, Mr. Daigre was a member of a group on campus known as "Staff of Color." (Decl. of Daigre at 9); (Dep. of Robinson, 67:1 - 19).[2] Although the extent of his involvement and the degree to which this group was recognized by EdCC is in question, Defendants acknowledge that such a group exists. (Dep. of Oharah, 94:21 - 95:5); (Dep. of Beem, 126:1 - 18). Mr. Daigre alleges that through this group, he has repeatedly taken positions on racial issues and has actively promoted racial and gender equality on campus. Furthermore, it is certainly a protected activity for Mr. Daigre to be associated with a group on campus that addresses racial inequality. *See Raad*, 323 F.3d at 1197 ("Protected activity includes . . . engaging in [] activity intended to oppose an employer's discriminatory practices.") (internal quotations and citation omitted). As a result, the Court finds that Mr. Daigre clearly engaged in protected activities under Title VII.

The next inquiry is to determine whether Mr. Daigre suffered an adverse employment action. The Supreme Court has held that an adverse employment action exists if it is materially

---

[2] The Court notes that Mr. Daigre's counsel repeatedly refers to entire depositions to support key factual assertions, such as the one made here about Mr. Daigre's involvement with the "Staff of Color," without offering the Court a pinpoint citation. This practice is entirely inexcusable, particularly where the depositions referred to exceed 140 pages in length.

adverse to a reasonable employee or job applicant. *Burlington Northern & Sante Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2409 (2006). The Ninth Circuit has similarly held that an "action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243. Here, Mr. Daigre was terminated from his employment. There is no question that Mr. Daigre has suffered an adverse employment action, and Defendants also concede this point.

The last step in determining whether Mr. Daigre has made a prima facie case of retaliation is to determine whether there is a causal link between the protected activity and the adverse employment action. As discussed above, Mr. Daigre engaged in protected activities by filing a complaint with the EEOC in March of 2007, and by complaining to EdCC about the way in which Mr. Almatrood was terminated. He also continually engaged in the protected activity of being involved in the "Staff of Color." Moreover, he received his termination letter on July 31, 2007. Therefore purely in terms of temporal proximity, there exists a sufficient nexus between these events such that a reasonable juror could conclude that the termination was in response to Mr. Daigre's protected activities. *See Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 850 (9th Cir. 2004) ("When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred.").[3]

Nevertheless, Defendants cite several cases to suggest that three or four month lapses between the protected activity and the adverse employment action cannot alone establish causation. (*See* Dkt. #19 at 17, n.75). Defendants also argue that causation cannot be inferred where the evidence demonstrates that a defendant launched the process that ultimately resulted in an adverse employment decision before the plaintiff's protected activity took place. (*See* Dkt. #19 at 17) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Harris v. City of Seattle*, 315 F. Supp. 1112, 1126 (W.D. Wash. 2004)). Defendants contend that they legitimately launched an investigation into Mr. Daigre's computer activities well before Mr.

---

[3] The temporal proximity is closer when considering that Mr. Daigre actually received notice that he would be subject to disciplinary action on June 22, 2007.

MEMORANDUM ORDER
PAGE - 9

Daigre initiated his 2007 EEOC complaint. However, these arguments ignore the fact that Mr. Daigre is not relying on temporal proximity alone to establish a causal link between his protected activities and the adverse employment action. While temporal proximity alone may support a finding of causation, it is not the only grounds for which a court can find that a causal link exists. *See*, *e.g.*, *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1285-86 (9th Cir. 2001) (finding that a plaintiff could make a prima facie case of retaliation where the record demonstrated that she made several complaints long before the adverse employment action). Here, sufficient evidence exists that suggests that Defendants may have acted with an improper retaliatory motive given Mr. Daigre's lengthy history at EdCC. A reasonable jury could easily infer that the termination was in response to Mr. Daigre's continual complaints about racism at EdCC over the past 10 years, either through lodging multiple complaints with the EEOC, or by complaining about the way in which Mr. Almatrood was terminated, or through his participation in the "Staff of Color." Consequently, the Court concludes that Mr. Daigre has sufficiently made a prima facie case of retaliation.

### 2. Legitimate, Non-Discriminatory Reason

The next step in the *McDonnell Douglas* burden-shifting framework is to determine whether the employer can "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Manatt*, 339 F.3d at 800. It is worth reiterating that the burden is not one of persuasion, but one of production. *See Lindsey*, 447 F.3d at 1147. In the instant case, Defendants contend that Mr. Daigre was terminated because he violated the State Ethics Law and EdCC policies regarding appropriate use of EdCC-owned computers and internet resources. Defendants further indicate that a hearing was held on June 7, 2007 to address Mr. Daigre's conduct, and that EdCC concluded that Mr. Daigre was using computers to promote his own personal vitamin business as well as to conduct personal business activity on E-bay and Craig's list. Mr. Oharah also specifically noted in his termination letter that Mr. Daigre was being terminated for his failure to exemplify the type of accountability expected from an EdCC employee. Thus, the Court finds that Defendants have met their minimal burden in establishing that Mr. Daigre was terminated for a legitimate, non-discriminatory reason.

MEMORANDUM ORDER
PAGE - 10

### 3. Pretext

The last step in the *McDonnell Douglas* framework requires the plaintiff to show that the employer's reasons for the adverse employment action are merely pretext. *McDonnell Douglas*, 411 U.S. at 804. To make such a showing, a plaintiff must raise a genuine issue of material fact that an employer's actions were discriminatory. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 (9th Cir. 1994); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). "This burden is hardly an onerous one: the plaintiff who has established a prima facie case need produce very little evidence of discriminatory motive to raise a genuine issue of fact as to pretext." *Payne v. Northwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997) (internal quotations and citations omitted). Here, Mr. Daigre has submitted evidence to suggest that a reasonable juror could conclude that EdCC's reasons for terminating Mr. Daigre were merely pretext for two primary reasons.

First, the EdCC-initiated investigations of Mr. Daigre's desktop is not wholly consistent with Mr. Oharah's justifications for terminating Mr. Daigre. Although Mr. Oharah indicates that a primary factor in Mr. Daigre's termination was his excessive use of EdCC-owned computers for his own personal benefit, a closer examination of the reports prepared by the experts hired by EdCC reveals a different story. Rod Halverson ("Mr. Halverson"), an EdCC employee who was asked to perform an investigation on Mr. Daigre's computer in November of 2006, concluded that:

> A review of adaigre documents didn't produce any data that would support the concern that Alan Daigre is engaged in any activity of personal gain or profit using this system.
>
> Two other desktop computers were generally scanned and no data was found to support the concern that Alan Daigre is engaged in any activity or personal gain or profit using this system.

(Decl. of Daigre, Ex. E at 56).

Despite this conclusion, EdCC continued to investigate Mr. Daigre, hiring an independent Forensic Analyst, Michael Wayne Andrew ("Mr. Andrew'") to analyze Mr. Daigre's computer. Mr. Andrew summarized his examination as follows:

> There is no evidence contained on the drive indicating Mr. Daigre has used the computer to conduct business related to his liquid vitamin company either during work hours or

MEMORANDUM ORDER
PAGE - 11

otherwise. The large number of web pages recovered that reference the email address of lkdenterprise@netzero.com appear to be the result of this account being the primary email account used by Mr. Daigre. There is a significant amount of email traffic related to dating and singles web sites.

(*Id.*, Ex. F at 70).

Furthermore, EdCC's policy regarding computer use allows for occasional and limited personal use. The policy specifically provides:

> Occasional limited use of the college's facilities and equipment, including the use of the electronic messaging systems by employees, is permitted for other than official job purposes only if all five of the following criteria are met:
>
> 1. there is no cost to the state, or the cost is de minimis;
> 2. the use of the resources does not interfere with the performance of the employee's official duties;
> 3. the use is brief in duration and accumulation;
> 4. the use does not compromise the security or integrity of state information or software; and
> 5. the use promotes organizational effectiveness or the activities improve the work-related skills of the employee.

(Decl. of Ohara, Ex. F at 2).

Given this policy, coupled with the reports prepared by Mr. Halverson and Mr. Andrew, it is clear that a reasonable juror could certainly find that Mr. Oharah's primary justification in terminating Mr. Daigre may have been pretext.

Second, Mr. Daigre also raises a genuine issue of material fact with respect to Mr. Oharah's decision to terminate Mr. Daigre based on the "totality of the circumstances." Mr. Oharah specifically claimed that Mr. Daigre had a troubled employment history and had shown a continual inability to be accountable for his actions. However, this once again is not wholly consistent with a report prepared by an independent investigator hired by EdCC in 2001 to determine the legitimacy of five separate complaints made by employees at EdCC against Mr. Daigre. The investigator, Lee Lambert, concluded that "Mr. Daigre's actions do not rise to the level reflective of a neglect of duty, inefficiency, incompetence, mistreatment or abuse of fellow workers or members of the public, racial discrimination or any ethical violations." (Decl. of Daigre, Ex. D at 54). As a result, Mr. Oharah's justifications are undermined by this report which unequivocally clears Mr. Daigre of any wrongdoing.

Ultimately, the Court finds that there remains a question of fact with respect to Mr.

MEMORANDUM ORDER
PAGE - 12

1  Daigre's retaliation claim against EdCC.  Mr. Daigre adequately fulfills his burden of

2  establishing that there is sufficient objective evidence to conclude that EdCC engaged in

3  retaliation for Mr. Daigre's protected activities while he was employed at EdCC.  It would be

4  premature for the Court to hold otherwise.  Indeed, "summary judgment for the defendant will

5  ordinarily not be appropriate on any ground relating to the merits because the crux of a Title

6  VII dispute is the elusive factual question of intentional discrimination." *Warren v. City of

7  Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995).

### E. Plaintiff's Retaliation Claims Against the Individual Defendants

Mr. Daigre also asserts retaliation claims against the individual Defendants under Title VII.  Defendants contend that this claim is improper because individual defendants cannot be held liable under Title VII.  The Court agrees.  It is well-established that the statutory scheme of Title VII does not impose personal liability for employees.  *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995) (citing *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 588 (9th Cir. 1993)).  In *Miller*, the court reasoned that Congress limited liability under Title VII to employers with 15 or more employees because it "did not want to burden small entities with the costs associated with litigating discrimination claims." *Miller*, 991 F.2d at 587.  Therefore is was "inconceivable" that Congress intended to allow individual employees to be sued under Title VII.  *Id.*  In any event, and as mentioned above, Mr. Daigre's counsel does not respond to this argument.  Accordingly, Mr. Daigre's claims against the individual Defendants shall be dismissed.  The only remaining claim in this case is Mr. Daigre's retaliation claim under Title VII against Defendant EdCC.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and orders:

(1) Defendants' Motion for Summary Judgment (Dkt. #19) is GRANTED IN PART.  All of Plaintiff's claims shall be dismissed with the exception of his retaliation claim under Title VII of the Civil Rights Act.  In addition, all Defendants are dismissed from this action with the exception of Defendant Edmonds Community College.

MEMORANDUM ORDER
PAGE - 13

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 16th day of October, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

MEMORANDUM ORDER
PAGE - 14